# JOSEPH WENAR
## *v.*
# J. J. POHL.

### REMOVAL OF CAUSES.

1. Section 720, U. S. Rev. Stat. (U. S. Comp. Stat. 1901, p. 581), has no application to a case properly removed to the United States court. This court has power to enjoin a party from proceeding further in an insular court after such removal.

2. If the case be a removable one, and stands removed by the proper steps, then the jurisdiction of this court over the parties immediately attaches; and it may require either party to do or not to do any act affecting the relief this court may finally afford, and may issue any writ necessary to the exercise of its jurisdiction.

3. When the defendant in an action in the insular court which is by law removable to this court files and presents to the former court his petition for a removal containing the necessary jurisdictional averments, and files therewith a proper bond, it is the duty of the insular court to accept the petition and bond, and proceed no further. Any further action by it is *coram non judice*.

4. The insular court has no power to try an issue of fact made by the petition, but may determine whether upon the face of the record a removal has been effected; but even this action of the insular court is reviewable by this court. The decision of the insular court whether case is removable is not binding upon this court, and cannot limit its jurisdiction; nor can such jurisdiction be defeated by the refusal of the insular court to act upon the petition.

5. Section 2 of the act of August 13, 1888, relating to removals from state courts to United States courts, applies to this court; and a cause cannot be removed from an insular court to this court if it appears from the record that the defendant is a resident of Porto Rico.

6. If the jurisdiction of this court, by removal, be doubtful, it should not be exercised.

February 7, 1902.

*Mr. F. H. Dexter* for complainant.

*Mr. T. D. Mott* for defendant.

HOLT, Judge, delivered the following opinion:

This is a motion upon a bill filed for a temporary injunction to prevent the defendant from taking possession of certain premises by virtue of the action of the insular district court in a suit of Pohl against Wenar, brought in that court, and which action was had after that cause, by law, stood transferred to this court. Upon the filing of the bill a temporary restraining order was made in order to preserve the then status of the parties until the question of the right to an injunction could be fully heard. It has been fully and ably argued upon both sides, and the court has given to it much thought and a very extended examination of authorities The provision in § 720 of the United States Revised Statutes, U. S. Comp. Stat. 1901, p. 581, forbidding a United States court from enjoining proceedings in a state court, has no application where a case in fact stands removed to the United States court. The Supreme Court of the United States has so held. French v. Hay (French v. Stewart) 22 Wall. 250, 22 L. ed. 857. In such a case the jurisdiction of the United States court has attached, and the parties to the suit are subject to its control.

It is true, some cases hold that if a state court asserts jurisdiction, and proceeds after a case stands legally removed to the United States court, the remedy of a party is by an appeal (undoubtedly he may pursue this course), and that it is not a proper exercise of the judicial power to enjoin the litigant from doing what the state court, although it no longer has jurisdiction, says he may do. Upon the other hand, there are cases holding that

the United States court in such a case may enjoin him, and by provisional remedies protect the other party. In my opinion, it should have, and has, this power. If the case be a removable one, and stands removed by the proper steps, then its jurisdiction over the parties attached. If it be said the further action of the state or insular court is void by reason of its no longer having jurisdiction, yet, if the party acting under it cannot be enjoined, he may do irreparable injury. The action to enjoin is auxiliary to the other. The power exists to require either party to do or not to do any act that may defeat the relief this court may finally afford. It may issue any writ necessary to the exercise of its jurisdiction.

This view is supported by numerous cases, of which but few are cited: Coker v. Monaghan Mills, 110 Fed. 803; French v. Hay (French v. Stewart) 22 Wall. 250, 22 L. ed. 857; Dietzsch v. Huidekoper (Kern v. Huidekoper), 103 U. S. 494, 26 L. ed. 497.

When the defendant in an action in the insular court that is by law removable to the United States court files and presents to that court his petition for removal containing the necessary jurisdictional averments, and files therewith a proper bond,—all of which he must do in a case like this, before or when he is required to plead or answer,—it is the duty of the insular court to accept the petition and bond, and proceed no further. Any further action by it is *coram non judice.* Its power ceases *eo instanti.* The right of removal comes from the statute. The insular court cannot grant or deny it. It to no extent depends upon its volition. The state courts generally exercise the right to examine the records, and determine if the statutory requirements have been complied with. They have, however, no right to try an issue of fact made by the petition, but they are at liberty to determine whether upon the face of the record

a removal has been effected, and the insular court may do so, but even this is reviewable by this court; and the decision of the state or insular court whether the case is removable is not binding upon this court, and cannot limit its jurisdiction. If the case be a removable one, it stands removed *ipso facto* when the proper petition and a bond are presented to the insular court. It cannot defeat it by refusing to act. An order by it removing the case is quite proper, but not essential; and, if it be not a removable case, even its order removing it will not devest it of jurisdiction or confer it upon the United States court; nor will its order refusing it prevent it if it be a proper case. In short, its order cannot affect the jurisdiction of the United States court. The rule is very clearly stated in the case of Burlington, C. R. & N. R. Co. v. Dunn, 122 U. S. 513, 30 L. ed. 1159, 7 Sup. Ct. Rep. 1262; and this much has been said that it may be fully understood in this jurisdiction.

The crucial and troublesome question in this case is, Was the case a removable one? If so, and the proper steps to that end were taken, then this court thereafter alone had jurisdiction, and all subsequent proceedings in the insular court were *coram non judice.* If not, then the injunction asked must be refused and the Pohl v. Wenar Case remanded to the insular court.

The petition for removal avers the matter in dispute exceeds $1,000, and that when the suit was begun and then both the plaintiff and defendant were United States citizens. It is silent as to residence. The bill for an injunction is fuller; it avers both are citizens of the United States and residents of Porto Rico. Upon these averments of the petition for removal, and upon this state of case, was the cause a removable one?

The removal of causes from a state to a United States court, so common in the United States, is now, and naturally seems,

Wenar v. Pohl.

novel to the insular courts in this jurisdiction, but § 34 of the act of Congress of April 12, 1900, providing for civil government in Porto Rico, expressly provides that the laws of the United States relative to the removal of causes as between the United States courts and the state courts shall apply as between this court and the courts of Porto Rico.

The practice in the United States, of removing certain cases from the state to the United States courts, is an old one. It has existed from the formation of our government. The act of Congress of 1789, commonly known as the "judiciary act," provided for it in certain cases. One of the grounds was that, if the suit was by a citizen of the state where it was brought, and the defendant was a citizen of another state, the latter could transfer it; and, if there were several plaintiffs, all the necessary ones had to be citizens of the state in which the suit was brought, and all the necessary defendants had to be citizens of a different state or states.

In 1866 the law was so amended that one or more of several defendants, aliens, or citizens of states other than where the suit was brought, might remove it as to them, if it was a severable controversy. The act of Congress of March 2, 1867, added a new class of removable cases. It gave the right on account of prejudice or local influence to either the plaintiff or defendant if they were citizens of different states. The act of March 3, 1875, gave the right to either the plaintiff or the defendant in all classes of cases where the right existed, and, if the controversy was wholly between citizens of different states, one or more of either plaintiffs or defendants might remove the case. The act of March 3, 1887, amended by that of August 13, 1888, and which is the law now in force, reversed the previous tendency of legislation to enlarge the right, restricted it in some respects, and, after providing in § 1 as to the original jurisdic-

tion of the United States circuit courts,—which means when the court may entertain in the first instance,—the portion of § 2, vol. 1, p. 612, Supplement to United States Revised Statutes, U. S. Comp. Stat. 1901, p. 508, applicable to this case, says:

"Sec. 2. That any suit of a civil nature, at law or in equity, arising under the Constitution or laws of the United States, or treaties made, or which shall be made, under their authority, of which the circuit courts of the United States are given original jurisdiction by the preceding section, which may now be pending, or which may hereafter be brought, in any state court, may be removed by the defendant or defendants therein to the circuit court of the United States for the proper district. Any other suit of a civil nature at law or in equity, of which the circuit courts of the United States are given jurisdiction by the preceding section, and which are now pending, or which may hereafter be brought, in any state court, may be removed into the circuit court of the United States for the proper district by the defendant or defendants therein, being nonresidents of that state."

Section 1 gives this court original jurisdiction concurrent with the state or insular courts, of certain classes of causes, one of which is where there is a controversy between citizens of different states. Nothing is said in it as to jurisdiction by removal. It will be seen that by the first clause cited of § 2 the defendant may, in certain causes of which the United States court has original jurisdiction by § 1, remove them to it from the state court without regard to the residence of the parties; but they do not include cases of diversity of citizenship. Then the second clause provides that any other cause of which the United States court has original jurisdiction by § 1 may be

removed from the state court if the defendant be a nonresident.

A defendant may only remove a case upon the ground of citizenship when it is one of which this court has by § 1 original jurisdiction, and he is also a nonresident of the state (here, Porto Rico) in which it has been brought.

Original jurisdiction by this court is one thing, and jurisdiction by removal is another. , To remove a cause, the original jurisdiction required by § 1 must exist; it must be an action of the character named in it, and in addition, the ground of removal provided in § 2 must also exist. The first may exist, and there be no right of removal. The original jurisdiction is concurrent with the state or insular court, and the first court acquiring it continues to hold it. But if, in addition to this court's having original jurisdiction, the defendant be a nonresident, he may remove the cause to this court. Being a nonresident he is not likely to have as much local influence as his adversary; will not have as fair a chance in the local court as in the United States court, which is not so local in character. The fact that this court may have original jurisdiction is not alone sufficient, however to authorize it to retain jurisdiction upon removal; and it is now the settled construction of these two sections that, although the United States court may have original jurisdiction of an action,—jurisdiction if first brought therein,—yet to remove it from the state or insular court the facts must bring it within the provisions of the 2d section. Arkansas Valley Smelting Co. v. Cowenhoven, 41 Fed. 450; Mills v. Newell, 41 Fed. 529; Long v. Long, 73 Fed. 369; Martin v. Snyder, 148 U. S. 663, 37 L. ed. 602, 13 Sup. Ct. Rep. 706.

The act of Congress of April 12, 1900, creating civil government in Porto Rico, commonly known as the "Foraker act,"

gave to this court the jurisdiction of both a United States district and circuit court, as then provided by law. By it the amount in dispute had to be as much as $2,000, exclusive of interest and costs, in civil cases, and they of a certain character. Apart from this, it also applied to this court the provisions of the United States law as to the removal of causes. On March 2d, 1901, the act was amended as follows:

"Sec. 3. That the jurisdiction of the district court of the United States for Porto Rico in civil cases shall, in addition to that conferred by the act of April twelfth, nineteen hundred, extend to and embrace controversies where the parties, or either of them, are citizens of the United States, or citizens or subjects of a foreign state or states, wherein the matter in dispute exceeds, exclusive of interest or costs, the sum or value of one thousand dollars." [31 Stat. at L. 953, chap. 812.]

It is urged that this not only gave this court original jurisdiction of cases involving but $1,000 where the parties, or either of them, were aliens or citizens of the United States, but that it authorizes a removal in all such cases to the United States courts without regard to residence. Certainly it does not do so in letter. It is silent as to the removal of cases. It is said, however, this was the spirit and purpose of it. If so, and § 3 applies to removals, then the jurisdiction of this court is, in effect, exclusive as to Americans and foreigners. This certainly was not intended. Resident Americans are by § 7, act of April 12, 1900, made a part of the body politic known by law as the "People of Porto Rico." As § 1 of the act of 1887 does one thing, to wit, fixes the jurisdiction of the United States court, and § 2 does another, to wit, provides when cases of which it has jurisdiction may be removed from the state courts, and as § 3 of the act of March 2, 1901, by its terms relates only to

jurisdiction, and says nothing of removals, it should be read into § 1 only, and not be held to apply to § 2, relating to the removal of causes. It enlarged the original jurisdiction. of this court, but not its jurisdiction by removal. It is said the exigencies of existing conditions require a different rule. If so, the legislative power will doubtless provide for it. The court must accept the law as it finds it, and hew to the line, whether the chips fall upon the one side or the other. If, however, there be any court in the island in which justice is not dispensed to all residents alike, whatever their nationality, then the sooner the legislative power dispenses with that court the better.

It is also suggested a different construction was intended in order to fairly comply with article 11 of the Paris treaty, under which Porto Rico was acquired; but that article only provides that the Spaniards here shall have the same rights in the courts as the citizens of the country have to which the courts belong, and the construction now put upon the law is in no way counter to such right.

The right of removal is altogether statutory. If the jurisdiction by removal be doubtful it should not be exercised. The great majority of rights are to be settled in the state or insular courts, and when the United States court is doubtful of its jurisdiction it should leave the matter to be settled where the jurisdiction is undoubted. This is best for all, as otherwise the litigation might be long protracted,—the case be tried upon its merits, and after all this go to the Supreme Court of the United States, and end in naught by a reversal because this court took jurisdiction erroneously by removal. Johnson v. Wells, F. & Co. 91 Fed. 1.

The petition for removal of the action of J. J. Pohl against Joseph Wenar did not aver necessary jurisdictional facts, and

Wenar v. Pohl.

they are shown by the bill for an injunction not to exist, and it must, therefore, be refused, and said action be remanded to the San Juan district court.    All of which will be done by proper orders of this court at the cost of said Wenar.